# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lizandro Jose Castresana-Rodriguez,<br>　　　　Petitioner,<br>vs.<br>Katherine S. Kane,<br>　　　　Respondent. | CV-07-1625-PHX-DGC (JCG)<br>**REPORT & RECOMMENDATION** |

On August 23, 2007, Petitioner Lizandro Jose Castresana-Rodriguez filed a Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2241. (Doc. No. 1.) Respondent filed an answer on December 14, 2007. (Doc. No. 12.) Petitioner filed a reply on January 18, 2008. (Doc. No. 14.)

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Guerin for a Report and Recommendation.

The Magistrate Judge recommends that the District Court, after its independent review of the record, deny the petition.

## **Summary of the Case**

Petitioner is a native and citizen of Peru. (Answer, Ex. 1.) On November 17, 1985, Petitioner was admitted to the United States as an immigrant. (*Id*.)

On November 13, 1991, in the Superior Court of California, County of Los Angeles, Petitioner was convicted of Possession of a Controlled Substance (Cocaine), a felony, in violation of California Health and Safety Code Section 11350. (Answer, Ex. 2.)

On March 17, 2004, in the Superior Court of California, County of Los Angeles,

Petitioner was convicted of Possession of Controlled Substance (Methamphetamine), a misdemeanor, in violation of California Health and Safety Code Section 11377. (Answer, Ex. 3.)

On May 9, 2005, in the Superior Court of California, County of Los Angeles, Petitioner was allegedly convicted[1] of Receiving Stolen Property, a felony, in violation of California Penal Code Section 496(a). (Answer, Ex. 4.) Petitioner was sentenced to 16 months in prison. (*Id*.)

On February 9, 2006,[2] the Department of Homeland Security ("DHS") apprehended Petitioner and placed him in removal proceedings pursuant to § 237 of the Immigration and Nationality Act ("INA"). (Answer, Ex. 4.) DHS charged Petitioner with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) [INA § 237(a)(2)(A)(iii)], which authorizes removal of an alien who has been convicted of an aggravated felony defined in 8 U.S.C. § 1101(a)(43)(G) [INA § 101(a)(43)(G)] to include a law relating to a theft offense with a term of imprisonment of at least one year imposed. (*Id*.)

On March 2, 2006, DHS charged Petitioner with one additional ground for removability: 8 U.S.C. § 1227(a)(2)(B)(I) [INA § 237(a)(2)(B)(I)], which authorizes removal of an alien who, at any time after admission, is convicted of violating any law relating to a controlled substance. (Answer, Ex. 5.) DHS cited to Petitioner's November 13, 1991 and March 17, 2004 convictions in California state court. (*Id*.)

On February 9, 2006, DHS served Petitioner with a Notice of Custody Determination holding him without bond. (Answer, Ex. 6.) On May 11, 2006, a bond hearing was held and the immigration judge ("IJ") denied Petitioner's request for a change in custody status on the ground that Petitioner was properly held without bond pursuant to the mandatory detention

---

[1] Respondents do not provide a copy of the state court record documenting Petitioner's May 9, 2005 conviction and sentence. The conviction was alleged in the INS Notice served on Petitioner on February 9, 2006. (Answer, Ex. 4.) The government later withdrew the allegation. (Answer, Ex. 8.)

[2] In their answer, Respondents claim that the government filed its Notice to Appear on January 31, 2006, and that Petitioner was taken into custody that same day. Review of the NTA indicates, however, that the NTA was served on Petitioner on February 9, 2006. (Answer, Ex. 4.)

2

provisions of INA § 236(c).  (Answer, Ex. 7.)  The IJ also ruled in the alternative that Petitioner was dangerous and not likely to appear.  (*Id*.)  Petitioner reserved appeal.  (*Id*.)

On March 30, 2006, at a master calendar hearing, Petitioner admitted alienage, being a citizen and national of Peru, and denied the charges of removability.  (Answer, Ex. 8.)  DHS withdrew the charge alleging that Petitioner could be removed pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) [INA § 237(a)(2)(A)(iii)], which authorizes removal of an alien who has been convicted of an aggravated felony defined in 8 U.S.C. § 1101(a)(43)(G) [INA § 101(a)(43)(G)] to include a law relating to a theft offense with a term of imprisonment of at least one year imposed.  (*Id*.)  On May 15, 2006, the IJ sustained the controlled substance charge of removability.  (*Id*.)  The IJ denied Petitioner from relief from removal pursuant to former INA §§ 212(c) or 240A[3] based on the dates and types of Petitioner's convictions.  (*Id*.)  Petitioner was ordered removed to Peru and he reserved appeal.  (*Id*.)

On September 25, 2006, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal, affirmed the IJ's decision, and ordered Petitioner removed to Peru.  (Answer, Ex. 9.)  On October 25, 2006, Petitioner filed a Petition for Review in the United States Court of Appeals for the Ninth Circuit.  (Answer, Ex. 10.)  The Ninth Circuit has stayed Petitioner's removal pending its review of his appeal.  (*Id*.)

On January 16, 2007, Petitioner filed a Request for Parole with ICE.  (Reply, Ex. 1.)  On May 23, 2007, ICE issued a Notification of Custody Review Reconsideration to Petitioner.  (Answer, Ex. 13.)  ICE informed Petitioner that his release conditions were to remain unchanged.  (*Id*.)  Petitioner was scheduled for another custody review to occur on December 24, 2007.  (Answer, Ex. 14.)

On September 19, 2007, DHS submitted a Motion to Reopen proceedings with the BIA in an attempt to clear up what DHS viewed as an unaddressed issue on removal.

---

[3] Based on the age of his 1991 conviction, Petitioner argued that he was eligible for relief pursuant to former INA sections 212(c) and 240A, which were superseded by the enactment of the Illegal Immigration Reform and Immigrant Respondent Act of 1996.  Former INA sections 212(c) and 240A permit cancellation of removal and/or waiver of inadmissibility if the alien has lawfully resided in the United States for at least seven years and has not been convicted of an aggravated felony.

3

(Answer, Ex. 11.) On October 29, 2007, the BIA denied DHS' request to reopen the removal proceeding, asserting that there were no unaddressed issues on removal remaining. (Answer, Ex. 12.)

On August 23, 2007, Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2241, arguing that his continued detention violates 8 U.S.C. § 1226 and 8 U.S.C. § 1231.

## **Discussion**

Alien detention and removal is governed by a multi-layered statutory scheme. *See* 8 U.S.C. §§ 1226b, 1231, 1537. The two main statutory provisions are sections 1226 and 1231 [INA §§ 236, 241].

**A.    Petitioner's detention does not violate 8 U.S.C. § 1226**

Ordinarily, section 1226 governs the initial apprehension and detention of aliens to determine whether an alien should be removed from the United States. Section 1226(c) requires the detention of certain classes of aliens, notably those aliens who have been convicted of certain specific offenses. *See* 8 U.S.C. § 1226(c)(1)(B). Pursuant to 8 U.S.C. § 1226(c), aliens convicted of aggravated felonies must be detained "for the brief period necessary for their removal proceedings" because of the risk that if not detained, they "may continue to engage in crime and fail to appear for their removal hearings." *Demore v. Kim*, 538 U.S. 510, 513 (2003). Generally, where an alien appeals the IJ's decision to the BIA, a five month time period between the time the alien is taken into custody and the time the BIA issues its decision is considered reasonable. *See Kim*, 538 U.S. at 513. Justice Kennedy in his concurring opinion in *Kim* noted that "were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation or to protect against risk of flight or dangerousness but to incarcerate for other reasons." *Id*. at 532.

Petitioner's detention began on February 9, 2006, when he was served with a Notice to Appear and taken into custody. (Answer, Ex. 4.) The BIA dismissed Petitioner's appeal on September 25, 2006. (Answer, Ex. 9.) Thus, Petitioner was detained for a total of slightly

less than eight months during proceedings. This detention does not substantially exceed the five month average stated in *Kim*. There is no evidence before the Court to suggest that the INS unreasonably delayed pursuing and completing deportation proceedings such that the detention period is unreasonable or unjustified.

**B.     Petitioner's continued detention does not violate *Zadvydas***

If the alien is determined to be removable, section 1231 governs the detention, release, and removal of the alien. Section 1231(a)(2) authorizes the detention of the alien during the 90-day "removal period" which the statute assumes will be adequate in most circumstances to complete the removal. Detention past the 90-day limit may be allowed if the alien fails to make a good faith effort to obtain the necessary travel documents. *See* 8 U.S.C. § 1231(a)(1)(C).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that the period during which an alien may be detained, beyond the 90-day limit, is limited to that which is reasonably necessary to effectuate the alien's removal from the United States. *See id.* at 701. The Court presumed that six months was a reasonable amount of time in which to effectuate removal. *See id.* The Court explained that the six month presumption does not mean that every alien not removed must be released after six months. *See id.* To the contrary, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* After the 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. *See id.* And for detention to remain reasonable, as the period of post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. *Id.*

In Petitioner's case, the 90-day "removal period" has not yet begun. Section 1231(a)(1)(B) provides that the removal period begins on the latest of the following: (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the

5

court's final order; (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. *See* 8 U.S.C. § 1231(a)(1)(B). Although Petitioner is subject to an administratively final order of removal, this "removal period" has not yet begun because his removal order is currently on appeal to the Ninth Circuit and because the Ninth Circuit has granted Petitioner a stay of his removal. The "removal period" will not begin for Petitioner until "the date of [Ninth Circuit's] final order." 8 U.S.C. § 1231(a)(1)(B)(ii). Because 8 U.S.C. § 1231 is not yet applicable in Petitioner's case, his claim that he has been unlawfully detained beyond the 90-day removal period is meritless.

**C.   8 U.S.C. § 1226(c) does not apply to the length of time between the BIA's final decision regarding removability and termination of Petitioner's judicial appeal of the BIA's decision**

To the extent that Petitioner is arguing that the Court should consider the time that has passed since the BIA issued its final decision as time spent in detention pursuant to 8 U.S.C. § 1226(c), his argument should be rejected. Such an argument would require applying *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005) to this case, and this Court concludes that *Tijani* does not apply. In *Tijani*, an alien detained pursuant to 8 U.S.C. § 1226(c) sought by habeas proceedings to compel a bond hearing. *Id.* at 1242. At the time of the decision, Tijani had been in federal custody for over thirty-two months. *Id.* He had spent twenty of those months in the administrative process. *Id.* at 1246 (Tashima, J., concurring) (noting that the IJ took almost seven months to issue a decision and the BIA review took an additional thirteen months). In addition, the time of detention during judicial review was prolonged by the government's requests for extensions. *Id.* at 1242. Although the text of § 1226(c) does not reference expediency, in an effort to avoid constitutional difficulties, the *Tijani* court construed § 1226(c) to require detention of criminal aliens only in "expedited" removal proceedings. *Id.* at 1242. The court did not elaborate on this standard, instead summarily concluding that "[t]wo years and eight months of process is not expeditious...." *Id*.

Cases interpreting *Tijani* fall into two categories, those that limit its application to detention during unreasonably long administrative proceedings, and those that apply its

standard to judicial appeal time as well. *See Mboussi-Ona v. Crawford*, 2007 WL 3026946 (D. Ariz. 2007) (collecting cases). Unlike the Petitioner in *Tijani*, the duration of Petitioner's administrative detention only slightly exceeded the five month time period considered reasonable in *Kim*. Therefore, Petitioner can only succeed under *Tijani* if *Tijani* can be read as holding that § 1226(c) entitles him to habeas relief based solely on the length of detention during his judicial appeal.

For the reasons set forth in *Mboussi-Ona*, the Court concludes that it is reasonable to reject application of *Tijani* in Petitioner's case and limit *Tijani's* application to detention during unreasonably long administrative proceedings. First, neither the majority nor the concurring opinion in *Tijani* discusses whether the usual judicial review process in itself can fail the expedited standard. *See Mboussi-Ona*, 2007 WL 3026946 at *5. Petitioner's judicial appeal time is within the norm for civil appeals in the Ninth Circuit. There is no evidence to suggest that the government has prolonged Petitioner's appeal in any way.

Second, to conclude that normal judicial appeal time itself exceeds what § 1226(c) permits would undercut the purpose of § 1226(c), because by merely seeking judicial review, every alien found removable would be entitled to an individualized bond hearing and possible release. *Id*. In contrast, Congress enacted § 1226(c) with evidence that more than one out of every five deportable criminal aliens released on bond fail to appear for their removal hearings. *See id.* (citing *Kim*, 538 U.S. at 519-20). In fact, Congress was concerned with the practice of filing frivolous appeals as a major cause of systemic failures in the deportation process. *See id.* (citing *Kim*, 538 U.S.. at 530 n. 14 and *Zadvydas*, 533 U.S. at 713). "A rule creating a universal right to an individualized bond hearing merely by seeking judicial review would bring the art of delay to perfection." *See id.*

In addition, a final judicial appeal proceeds against the presumption of a valid agency decision. *See id.* (citing *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n. 1 (1992). Therefore, any due process claim to release pending judicial review diminishes in light of the finding, after ample process, that the alien is removable. *Id*. These considerations weigh against interpreting *Tijani* as guaranteeing every administratively adjudicated removable alien an

1  opportunity to request bond, merely by filing a judicial appeal. *Id*.

## Recommendation

Therefore, the Magistrate Judge recommends that the District Court, after its independent review of the record, deny the Petition for Writ of Habeas Corpus filed on August 23, 2007. (Doc. No. 1.)

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation.  If objections are not timely filed, the party's right to de novo review may be waived.  If objections are filed, the parties should use the following case number: **CV-07-1625-PHX-DGC.**

The Clerk is directed to send a copy of this Report and Recommendation to Petitioner and Respondent.

DATED this 7th day of May, 2008.

_____
Jennifer C. Guerin
United States Magistrate Judge